IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOY WRIGHT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Case No. 2:23-cv-00172 |
| | § | |
| EDUCATION SERVICE CENTER, | § | |
| REGION 2, | § | |
| | § | **JURY TRIAL DEMANDED** |
| Defendant. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

To the Honorable United States District Court:

Plaintiff Joy Wright files this Original Complaint against Defendant Education Service Center, Region 2, and shows as follows:

### PARTIES

1. The plaintiff is Joy Wright. She is an individual and resident of Nueces County, Texas.

2. The defendant is Education Service Center, Region 2 ("the defendant"). It is a quasi-governmental agency, located in Nueces County, Texas. The defendant agreed to waive service of process and to accept service by e-mail on Ms. Leslie McCollom, O'Hanlon, Demerath & Castillo, 808 West Avenue, Austin, Texas 78701

(lmccollom@808West.com).

## JURISDICTION

3.  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3), respectively.

## VENUE

4.  Pursuant to 29 U.S.C. § 1132(e)(2), venue for this suit is proper in this district and division because it is the district and division where the alleged events occurred.  Venue for this matter is governed by a specific statute.  This is a suit for, in part, employment discrimination under Title VII.  Venue for suits brought under Title VII are governed by 42 U.S.C. § 2000e-5(f)(3).  The statute provides, in part, "[s]uch an action may be brought *in any judicial district in the State* in which the unlawful employment practice is alleged to have been committed."  42 U.S.C. § 2000e-5(f)(3) (emphasis added).  Here, the alleged unlawful employment practice occurred in Texas.  Therefore, venue for this action is statutorily-proper in this district and division because it is a judicial district in Texas.  *See* 42 U.S.C. § 2000e-5(f)(3).  Further, the plaintiff's employment and the defendant's decision to discharge the plaintiff was made in Nueces County, Texas.  This district and division embraces Nueces County, Texas.  Venue in this district and division is proper for this reason.  *See* 42 U.S.C. § 2000e-5(f)(3).

## FACTS

5.  In 1967, the Texas Legislature and the State Board of Education established twenty Education Service Centers throughout the state, including the defendant. The defendant represents that its mission "is to be a catalyst for change resulting in student improvement, efficiency, and economy of operation within our region and state. State and local initiatives are implemented within the region and every district within our region is provided both instructional and non-instructional assistance." Further, the defendant represents that the "primary focus of our organization is student achievement. We impact student achievement by offering relevant professional development for teachers, administrators, school board members, parents, and other clientele."

6.  The plaintiff was employed by the defendant from August 2022 to on or about February 9, 2023. Her job title was Special Education Specialist—Transition Specialist. Her monthly salary was $6,800, plus valuable benefits. She possesses a Master's Degree from the University of Texas—Arlington. She is well qualified for the position that she was hired for.

7.  During the interview process in August 2022, the plaintiff was asked several questions by Esperanza Zendejas, Executive Director for the defendant, about her sexuality. The plaintiff is lesbian. This made the plaintiff uncomfortable because she felt it was necessary to answer deeply personal questions about her wife and her impending divorce, but answered the questions to show cooperation and to help gain employment.

Specifically, before she knew of the plaintiff's sexuality, Zendejas asked what the plaintiff's "ex-husband did for a living." The plaintiff responded, "my ex- wife was in law enforcement." Then Esperanza dismissively asked, "do all people in same sex marriages refer to each other as husband or wife or partner," and also asked "would a female ever refer to another female as a husband?" The plaintiff found the questioning about her sexuality to be offensive, insulting and believes Esperanza consented to the plaintiff being hired only because the position needed to be filled, the plaintiff was qualified, and had been recruited to the position by another employee.

8. After the plaintiff began her employment, it was clear to her that she was being watched closely by Zendejas. Indeed, Kimberly Davis, the plaintiff's immediate supervisor, told the plaintiff that Zendejas was closely watching the plaintiff and even closely watching Kimberly Davis because she had recruited the plaintiff.

9. By December 2022, the plaintiff believed it was necessary to more specifically disclose to the defendant that she had certain disabilities that may be affecting her job performance and requested reasonable accommodations, including a standing desk, a proper work partner, working remotely, and/or a modified work schedule. The plaintiff's disabilities can affect, for example, her ability to properly communicate. However, despite the request for reasonable accommodations to Rose Tran, Human Resources, the plaintiff was not given clear answers to whether her accommodations would be granted.

Instead, the employer, in a hostile manner, requested medical records from her, and the plaintiff was then scolded by Kimberly Davis for having requested accommodations from Rose Tran, Human Resources.

10.     Following these events, the plaintiff experienced panic attacks while working, which was witnessed by others.

11.     Also, on the heels of more specifically disclosing her disabilities and requesting reasonable accommodations, the plaintiff received 3 "warning letters" from Kimberly Davis.  She had received no such complaints before her reasonable accommodation request.  The first was on January 20, 2023, and the second two were on January 27, 2023.  The plaintiff contends that the substance of the respective warning letters are for issues that are factually false and/or exaggerated.  Kimberly Davis even told the plaintiff that she does not "wish to fire" her but that she was being reprimanded because Zendejas had specifically directed Kimberly Davis to do so.

12.     However, despite then working without further disciplinary action or complaints for several days, the plaintiff was discharged on or about February 9, 2023.  The written discharge notice was signed by Esperanza.  Clearly, the prior warning letters were created as a pretext to discharge the plaintiff because of discrimination against her because of her sexuality, disabilities, and in retaliation to her request for reasonable accommodations.

13.     Following her discharge, the plaintiff filed a claim for unemployment

compensation benefits with the appropriate government agency. The agency granted benefits to the plaintiff, finding no work-connected misconduct by the plaintiff.

14. The administrative process with the EEOC was exhausted by the plaintiff prior to the filing of this lawsuit.

### Count 1—Gender Discrimination based on Sexual Orientation

15. The plaintiff incorporates within Count 1 all of the allegations set forth in paragraphs 1-14, *supra.*

16. Discrimination in employment based on sexual orientation is a form of gender discrimination under Title VII and is unlawful. *Zarda v. Altitude Express, Inc.*, 883 F. 3d 100, 112 (2d Cir. 2018). "We now conclude that sexual orientation discrimination is motivated, at least in part, by sex and is thus a subset of sex discrimination." *Id*. "Looking first to the text of Title VII, the most natural reading of the statute's prohibition on discrimination 'because of . . . sex' is that it extends to sexual orientation discrimination because sex is necessarily a factor in sexual orientation." *Id.* "This statutory reading is reinforced by considering the question from the perspective of sex stereotyping because sexual orientation discrimination is predicated on assumptions about how persons of a certain sex can or should be, which is an impermissible basis for adverse employment actions." *Id.* "In addition, looking at the question from the perspective of associational discrimination, sexual orientation discrimination — which is

6

motivated by an employer's opposition to romantic association between particular sexes — is discrimination based on the employee's own sex." *Id.* at 113.

17. "In sum, we see no principled basis for recognizing a violation of Title VII for associational discrimination based on race but not on sex." *Id.* "Accordingly, we hold that sexual orientation discrimination, which is based on an employer's opposition to association between particular sexes and thereby discriminates against an employee based on their own sex, constitutes discrimination "because of . . . sex."" *Id.* "Therefore, it is no less repugnant to Title VII than anti-miscegenation policies." *Id.*

18. Here, the defendant considered the plaintiff's sexual orientation (lesbian) both in its hostile treatment of the plaintiff during her employment and in discharging the plaintiff from her employment. The plaintiff is in a protected class of persons under Title VII because she is female and lesbian, the defendant discriminated against the plaintiff because of her gender (female)/lesbian in discharging her from her employment, the plaintiff was performing her job duties and responsibilities at a high level of competence, the plaintiff alleges that her gender (female)/lesbian was a motivating factor in the defendant's decision to discharge her, and, based on information and belief at this time, she was replaced by a non-lesbian employee.

19. The plaintiff also alleges that the discrimination was knowingly done and/or intentionally done and/or recklessly by the defendant.

20. The defendant's conduct caused damages to the plaintiff. She therefore seeks to recover her economic and non-economic damages from the defendant by this suit. Because of the nature of the conduct, the plaintiff also seeks to recover exemplary damages from the defendant, as provided by law, and as provided by law, all of her costs and attorney's fees incurred in this matter.

**Count 2—Disability Discrimination (State and Federal Law)**

21. The plaintiff incorporates within Count 2 all of the allegations set forth in paragraphs 1-20, supra.

22. The plaintiff alleges that she possesses disabilities and/or that the defendant perceived her to be disabled and that it was this perceived and/or actual disability that was a motivating factor in the defendant's employment decision to discharge her from her employment. The plaintiff further alleges that the person chosen by the defendant to replace her has no disabilities.

23. The plaintiff also alleges that the disability discrimination was knowingly done and/or intentionally done and/or recklessly by the defendant and/or was a motivating factor in the defendant's employment decision.

24. The defendant's conduct caused damages to the plaintiff. She therefore seeks to recover her economic and non-economic damages from the defendant by this suit. Because of the nature of the conduct, the plaintiff also seeks to recover exemplary

damages from the defendant, as provided by law, and as provided by, all of her costs and attorney's fees incurred in this matter.

### Count 3–Retaliation (State and Federal Law)

25. The plaintiff incorporates within Count 5 all of the allegations set forth in paragraphs 1-24, *supra*.

26. The plaintiff made a complaint to the defendant, complaining about unlawful discrimination against her based on her gender (sexual orientation), disabilities, and sought reasonable accommodations for her disabilities, respectively. These complaints are protected activity under both Title VII and the Texas Labor Code, respectively. That is, under both federal and state law, an employer may not retaliate against an employee who makes a complaint about unlawful discrimination.

27. In response to her protected activity, the defendant retaliated against the plaintiff by making her working conditions worse and ultimately discharging her from her employment.

28. The plaintiff alleges the retaliation was knowingly done and/or intentionally done and/or recklessly by the defendant.

29. The defendant's conduct caused damages to the plaintiff. She therefore seeks to recover her economic damages from the defendant, damages for mental anguish, and all other damages provided by law. Because of the nature of the conduct, the plaintiff also

seeks to recover exemplary damages from the defendant, as provided by law. As provided by law, the plaintiff also seeks recovery of her attorney's fees.

### PRAYER

30. For these reasons, Plaintiff Joy Wright, respectfully requests that Defendant Education Service Center, Region 2, be cited to appear herein and answer, and that upon trial of this matter, have judgment against Defendant for Plaintiff's reinstatement, damages, economic damages, non-economic damages, liquidated damages, mental anguish damages, exemplary damages, attorney's fees, costs, pre-judgment interest, post-judgment interest, and for such other relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

s/Jon D. Brooks
Jon D. Brooks
Attorney-in-Charge
Federal ID 24936
State Bar No. 24004563
400 Mann Street, Suite 1001
Corpus Christi, Texas 78401
361.885.7710
361.885.7716 (facsimile)
jbrooks@brooksllp.com

**Attorneys for Plaintiff Joy Wright**